IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

EVERETTE BATES,

     Plaintiff,

v.                                      CASE NO. 1:15-cv-27-MP-GRJ

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability, disability insurance benefits, and Supplemental Security Income (SSI). (ECF No. 1.)   The Commissioner has answered (ECF No. 9), and both parties have filed briefs outlining their respective positions. (ECF Nos. 12 & 13.)  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits on January 25, 2012, and his application for Supplemental Security Income on

January 30, 2012.  (R. 168-76.)  He alleged a disability onset date of

December 28, 2008.  *Id*.  Plaintiff's applications were denied initially and

upon reconsideration.  (R. 107-17, 122-31.)  An administrative law judge

(ALJ) conducted a hearing on August 13, 2013 and entered a decision on

August 30, 2013 finding Plaintiff not disabled.  (R. 17-32.)  The Appeals

Council denied Plaintiff's request for review on December 23, 2014.  (R. 1-

4.)  Plaintiff filed the Complaint in this case on February 19, 2015.   (ECF

No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the

evidence must do more than merely create a suspicion of the existence of

a fact, and must include such relevant evidence as a reasonable person

would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v.
Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389,
401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d
580, 584 n.3 (11th Cir. 1991).

evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age,

---

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]   In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]   Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]   Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

# III.  SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to whether Plaintiff meets Listing 12.02, the summary of the record is limited to evidence relevant to this Listing.

## A.    Medical Evidence

Plaintiff based his application for disability on several reported impairments, including blindness in his right eye, type 1 diabetes, and memory loss.  As part of Plaintiff's application for disability, non-examining state agency psychologists, Lawrence Annis, Ph.D., and Richard Lyon, Ph.D., reviewed Plaintiff's medical records.  The non-examining state agency psychologists expressly considered whether Plaintiff met Listing 12.02.

Dr. Annis' report, dated February 16, 2012, utilized the Psychiatric Review Technique Form, which is used to assess mental impairments.  Dr. Annis concluded that Plaintiff exhibited mild restriction in his activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  Dr. Annis also wrote that Plaintiff's records showed no evidence of the "C" criteria of Listing 12.02.  (R. 69-76.)

Dr. Lyon similarly prepared a report utilizing the Psychiatric Review Technique Form. In Dr. Lyons' April 4, 2012, report he concluded that Plaintiff had mild restriction in his activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  Dr. Lyon also found no evidence of the "C" criteria in the record.  (R. 79-89.)

The sole evidence that Plaintiff relies on in support of his argument that he met listing 12.02 is a December 2010 neurocognitive evaluation by Dr. Carmen Fernandez, Psy. D. (R. 698-703.)  During the evaluation, Plaintiff reported to Dr. Fernandez that his neuropsychological difficulties began a year and a half before the examination, coinciding with his first "diabetes attack."  These difficulties included memory loss and confusion and forgetting conversations and events.  Plaintiff told Dr. Fernandez that these cognitive events were increasing in frequency.

Plaintiff also told Dr. Fernandez that he could no longer spell accurately and would walk into walls on the right side, despite previously having had excellent memory and motor coordination.  Plaintiff described

double vision, blurred vision, profuse sweating episodes, and weekly headaches.

Plaintiff reported to Dr. Fernandez that he was a high school graduate and lacked learning difficulties in the past.  Plaintiff previously worked as a mechanic and in waste management.  At the time of the examination, he was unemployed because he could not find work and had difficulties filling out job applications.

Plaintiff reported that he could care for himself independently and could drive, but sometimes he forgot where he was driving.  Plaintiff stated that he limited his driving at night due to visual difficulties.  He was able to manage his own finances and medications.

Plaintiff described his mood as stressed and demoralized.  Dr. Fernandez wrote that Plainitff's affect was blunted, that he slept decently but awoke due to night sweats, and that he had recently lost significant weight.  Plaintiff had diminished vision in his right eye after a diabetic attack and bilateral blurred vision.

Dr. Fernandez assessed Plaintiff's mental state as impaired based on the examination results.  Dr. Fernandez concluded that Plaintiff showed "diminished functioning in processing speed, sustained

attention/concentration, visuospatial skills, and executive functioning. . . ."

Dr. Fernandez reported that Plaintiff exhibited severe depression.

According to Dr. Fernandez, due to the extent of Plaintiff's cognitive deficits

he could not be gainfully employed.  (R. 698-703.)

## B.    Hearing Testimony

At the administrative hearing on August 13, 2013, Plaintiff stated that

he last worked in 2008.  He was previously an auto repair mechanic for

about fifteen years.  Plaintiff relocated to Florida with plans to open an auto

repair shop, but did not open the shop because he was placed in intensive

care for his diabetes.

Plaintiff testified that he does not do housework; instead, a neighbor

does laundry and cooks for him.  Plaintiff says that he cannot prepare

meals himself because he is too "forgetful."  He does not wash dishes,

make the bed, vacuum, sweep, mop, take out the trash, grocery shop,

drive, or do yardwork.  Plaintiff is able to dress himself and shave.  He

does not go out to eat or read, but sometimes watches television or listens

to radio.  Plaintiff claimed that his hobbies include fishing maybe twice a

month and church maybe once a month.  His brother visits him about once

a month.  He uses the bus as a method of transportation.

Plaintiff testified that he takes prescription medications for his diabetes, memory loss and vision impairments.  Plaintiff has had eye surgery but says that it did not improve his vision.  He uses sleeping pills to sleep.

Plaintiff describes his memory episodes as bothersome because he cannot remember what he does.  According to Plaintiff, this is dangerous and prohibits him from working as an auto mechanic or driving.  Plaintiff believes that he would not be able to work a full time job.  (R. 33-51.)

## C.   Findings of the ALJ

The ALJ determined at step two of the sequential evaluation that Plaintiff's diabetes mellitus, headaches, monovision, hypertension, organic mental disorder with memory problems and affective disorder constituted severe impairments.

At step three of the sequential evaluation, the ALJ found that Plaintiff did not meet Listing 12.02.  In making this determination the ALJ first considered whether the criteria of "Paragraph B" were satisfied.  To meet the criteria of Paragraph B, the mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in

maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration.  The ALJ found that Plaintiff had mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration.  Accordingly, the ALJ concluded that Plaintiff did not satisfy the criteria of Paragraph B.

The ALJ also discussed whether the "Paragraph C" criteria of Listing 12.02 were satisfied.  The ALJ stated that the record did not demonstrate a "medically documented history of a chronic organic mental disorder or chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and either 1) repeated episodes of decompensation, each of extended duration; 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands would be predicted to cause the individual to decompensate; or 3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."  Consequently, because the ALJ did not find that

Plaintiff met either the Paragraph B or C criteria, the ALJ concluded that Plaintiff did not meet Listing 12.02.  (R. 17-29.)

The ALJ then went on to step four and determined that Plaintiff retained the ability to perform a limited range of light work subject to the following limitations: Plaintiff should avoid ladders, unprotected heights, and proximity to heavy machinery; he is also limited to occasionally bending, stooping, kneeling, crouching, squatting and crawling; and Plaintiff needs a work environment with good lighting and a low stress work environment with simple tasks and no production lines. Based upon this RFC the ALJ determined that Plaintiff could not perform his past relevant work.  The ALJ then went on to step five and concluded that because there are jobs in the national economy that Plaintiff can perform such as assembler, route clerk, and collator operator, Plaintiff was not disabled since January 30, 2012.

## IV.  DISCUSSION

On appeal, Plaintiff raises only one issue. Plaintiff says that the ALJ erred by failing to find that Plaintiff met Listing 12.02.  In support of his position, Plaintiff relies on a statement by Dr. Fernandez—who performed a neuropsychological evaluation on Plaintiff—that Plaintiff is unable to be

gainfully employed.[21]

To meet any Listing, a claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The claimant bears the burden of demonstrating that he meets a Listing.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

Listing 12.02 concerns "organic mental disorders."  Plaintiff argues that he has "an organic mental disorder with psychological and behavioral abnormalities associated with a dysfunction of the brain with a history, physical examinations, and laboratory tests that demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities."

---

[21]Plaintiff suggests that the ALJ erred by discounting Dr. Fernandez's opinion that Plaintiff is unable to be gainfully employed.  Dr. Fernandez's statement that Plaintiff cannot work is not entitled to controlling weight in a disability determination. The decision of whether a claimant cannot work is ultimately reserved for the Commissioner.  Social Security Ruling 96-5 ("Medical sources often offer opinions about whether an individual . . . is "disabled" or "unable to work" . . . [b]ecause these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); *see also* 20 C.F.R. § 404.1527 (medical opinions about matters reserved to the Commissioner will receive no "special significance").  Dr. Fernandez's opinion that Plaintiff could not work is not binding on the Commissioner and is not determinative of Plaintiff's disability.  The ALJ did, however, appropriately relied on the medical findings of Dr. Fernandez when assessing the extent of Plaintiff's impairments.

Plaintiff's statement of the issue refers to the definition of Listing 12.02 but completely ignores the specific criteria that a claimant must meet in order to be disabled under Listing 12.02.

The starting point for any Listing is the specific criteria that is necessary to meet the Listing.  Listing 12.02 requires that a claimant satisfy the criteria described in either both Paragraphs A and B, or the criteria in Paragraph C.  Paragraph A requires that a claimant have a loss of specific cognitive abilities or affective changes, and the medically documented persistence of at least one of the following: (1) disorientation to time and place; (2) memory impairment, either short-term, intermediate, or long-term; (3) perceptual or thinking disturbances; (4) change in personality; (5) disturbance in mood; (6) emotional lability and impairment in impulse control; or (7) loss of measured intellectual ability of at least 15 I.Q. points from pre-morbid levels or an overall impairment index clearly within the severely impaired range.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02(A).

The medical record, including Dr. Fernandez's report, evidences that Plaintiff has suffered a loss of cognitive abilities.  Plaintiff's treatment focused on his short term memory loss, including cognitive techniques to

help Plaintiff with his memory.  The Commissioner does not seriously

contest that Plaintiff meets the Paragraph A criteria nor does the ALJ

discuss the Paragraph A criteria in his decision.  Thus, there does not

appear to be any serious debate that Plaintiff satisfied the Paragraph A

criteria.

That does not end the analysis of whether Plaintiff meets the Listing.

Plaintiff must also satisfy the functional component of Listing 12.02 by

meeting the Paragraph B criteria. To meet the Paragraph B criteria Plaintiff

must demonstrate at least two of the following: (1) marked restriction in

activities of daily living; (2) marked difficulties in maintaining social

functioning; (3) marked difficulties in maintaining concentration,

persistence, or pace; or (4) repeated episodes of decompensation, each of

extended duration.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02(B).

In his written decision, the ALJ found that Plaintiff only had mild

restriction in his activities of daily living. As support for this finding the ALJ

relied upon the fact that Plaintiff was able to use public transportation, take

care of his daily hygienic and personal needs, and manage his finances

and medications.  The ALJ's finding is supported by Dr. Annis' and Dr.

Lyon's reports, each of which concluded that Plaintiff had only mild

limitations in his activities of daily living.  Dr. Fernandez's report does not

refute these conclusions. Rather, Dr. Fernandez's report confirms that

Plaintiff told her that he could care of himself independently, manage his

finances, and could drive.  Thus, the ALJ's conclusion that Plaintiff only

had mild restrictions in his activities of daily living is supported by

substantial evidence.

    With respect to social functioning, the ALJ found that Plaintiff had

mild difficulties based on Plaintiff's residence in veteran housing (with

minimal problems interacting with other veteran residents), Plaintiff's visits

with family, his interactions with his neighbor, his ability to attend doctor's

appointments and relate his complaints, and his denial of problems with

authority figures.  Dr. Annis and Dr. Lyon found that Plaintiff had moderate

restrictions in this area and recommended that he was best suited for

employment in environments with minimal interaction with the general

public.  Dr. Fernandez does not expressly discuss or offer any medical

opinions in her report regarding what level of limitations, if any, Plaintiff has

with respect to social functioning.  Thus, at most, the evidence

demonstrates that Plaintiff has no more than moderate limitations with

social functioning.  Therefore, even if the ALJ had concluded that Plaintiff

had moderate, as opposed to mild limitations with social functioning,

Plaintiff would still fail to meet Listing 12.02.

With regard to Plaintiff's limitations in concentration, pace, and

persistence the ALJ concluded that Plaintiff had moderate deficits in

attention, concentration, comprehension, and retention of basic concepts

and instructions.  Dr. Annis and Dr. Lyon similarly concluded that Plaintiff

exhibited moderate limitations in this area, but that Plaintiff would be able

to sustain concentration and perform simple tasks for a few hours each

day.  Drs. Lyons and Annis concluded that while Plaintiff might experience

some decrease in concentration, he would be able to complete simple

tasks in routine settings as needed.

While Dr. Fernandez concluded that Plaintiff's concentration and

memory were impaired her report is silent with regard to whether Plaintiff

had more than moderate limitations in concentration, persistence, and

pace.  Furthermore, even assuming that Dr. Fernandez had found that

Plaintiff had marked limitations in concentration, persistence, and pace, a

finding of marked limitations in only one functional area is not sufficient to

meet the B criteria of Listing 12.02.

Finally, the ALJ found that Plaintiff experienced no episodes of

decompensation, each of extended duration.  Dr. Lyon and Dr. Annis

similarly agreed.  Dr. Fernandez did not mention or evaluate whether

Plaintiff experienced episodes of decompensation, and the record as a

whole is devoid of any evidence of decompensation.

In view of the ALJ's findings, which are all supported by substantial

evidence, the Court concludes that the ALJ did not err in finding that

Plaintiff did not satisfy the "B" criteria of Listing 12.02.  Plaintiff did not

exhibit marked limitations in any of the functional areas, nor did he exhibit

episodes of decompensation.  Thus, Plaintiff failed to satisfy the criteria of

both Paragraph A and B and does not meet Listing 12.02.

As previously mentioned a claimant may also meet Listing 12.02 by

satisfying the criteria in Paragraph C. Paragraph C requires that the

claimant have a medically documented history of a chronic organic mental

disorder of at least two years' duration that causes more than a minimal

limitation of ability to do basic work activities, supported by medical

evidence, and one of the following: (1) repeated episodes of

decompensation, each of extended duration; (2) a residual disease

process that has resulted in such marginal adjustment that even a minimal

increase in mental demands or environmental change would cause the

individual to decompensate; or (3) a current history of one or more years'
inability to function outside a highly supportive living arrangement, and an
indication that this arrangement is continually necessary. 20 C.F.R. pt. 404,
subpt. P, app. 1, § 12.02(C).

The ALJ concluded that Plaintiff had not satisfied the Paragraph C
criteria because there was no evidence in the record of any of the
Paragraph C criteria.  Dr. Lyon and Dr. Annis also concluded in their PRTs
that there was no evidence that Plaintiff met the Paragraph C criteria.  Dr.
Fernandez did not expressly address the Paragraph C criteria in her
evaluation. Thus, Dr. Fernandez's report does not provide any evidence
suggesting that the Paragraph C criteria were met.

In a footnote in his memorandum, (ECF No. 12, p. 7 n. 4) Plaintiff
suggests that his residence in halfway houses provided by the VA qualifies
Plaintiff as meeting the Paragraph C criteria.  To the extent that Plaintiff
suggests that living in a halfway house provided by the VA constitutes " a
current history of one or more years' inability to function outside a highly
supportive living arrangement, and an indication that this arrangement is
continually necessary," there is no evidence of record that a VA halfway
house qualifies as a "highly supportive living arrangement" as opposed to

simply housing provided by the VA for veterans who currently have no other place to reside. In the absence of any evidence regarding this issue the ALJ did not err in concluding that there was no evidence to satisfy the Paragraph C criteria of Listing 12.02.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in finding that Plaintiff did not meet the requirements of Listing 12.02.  The ALJ's determination that Plaintiff does not meet Listing 12.02 is supported by substantial evidence in the record.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** this 19th day of January 2016.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**